*Michigan Supreme Court*
*Lansing, Michigan 48909*

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED APRIL 18, 2001**

NORMAN and ROSEMARY BYRNE,
DONALD and LEE NOLTE,
RICHARD and SUE BURTON,
BERNARD and MARGARET ROOKER,
ARTHUR and CONNIE VADEBONDOEUR,
DANIEL and JANE WHITE, GENE
McGANN, ROBERT and KATHY SCUDDER
and LIL VROMA, Individually,

    Plaintiffs-Appellants,

v                            No. 116412

STATE OF MICHIGAN and
DEPARTMENT OF STATE POLICE,

    Defendants-Appellees,

and

MOTOROLA COMMUNICATIONS AND
ELECTRONICS, INC.,

    Intervening-Defendant-
    Appellee.

_____

PER CURIAM

    The plaintiffs sued to stop construction of a State Police radio tower on a site near their homes. The circuit court granted summary disposition in favor of the defendants

and the Court of Appeals affirmed.  We likewise affirm.  The site of the tower was selected in a manner that accords with the pertinent statute.

I

In the wake of studies done in the 1980s, the Legislature concluded that the State Police radio communication system was outdated and inadequate.  The problems included aging and unsafe towers, restricted access to radio frequencies, and incomplete coverage of the state.

A long process led eventually to a 1994 contract with Motorola Communications and Electronics, Inc., under which Motorola would design and construct the "Michigan Public Safety Communications System" (MPSCS) for approximately $187 million.  When complete, the system of 181 towers would modernize communications for the State Police, and link law enforcement agencies throughout the state.[1]  The system would function as a whole, so that the location and height of individual towers would depend, inter alia, on the location and height of other towers.

The MPSCS is governed by 1996 PA 538, MCL 28.281 *et seq.*; MSA 4.491 *et seq*.  With regard to the selection of tower sites, the act provides:

_____

[1] The system also will be available to certain other agencies that are involved with law enforcement or public safety.  The Departments of Corrections, Natural Resources, and Transportation have been mentioned in this regard.

2

> In siting the buildings and equipment necessary to implement the Michigan public safety communications system, the director of the department of state police shall locate the system, a local unit of government with zoning authority shall be notified of a site selected in their jurisdiction and the requirements necessary for a site. If the selected site does not comply with zoning, the local unit shall have 30 days from the date of notification to grant a special use permit or propose an equivalent site. If the local unit does not grant a special use permit within the 30 day period, or a proposed alternate site does not meet the siting requirements, the department may proceed with construction. [MCL 28.282(2); MSA 4.492(2).]

This case concerns a particular tower planned for a site in Ada Township of Kent County. The tower is to be 475 feet tall, and is to be located near Honey Creek Avenue and Three Mile Road.[2] In an opinion concerning this and two other law suits challenging the same tower, the Court of Appeals set forth the pertinent facts. *Kent Co Aeronautics Bd v State Police*, 239 Mich App 563, 567-569; 609 NW2d 593 (2000).

> On August 12, 1997, the State Police and Motorola notified plaintiff Ada Township of their intention to construct the communications tower at the Honey Creek site. The notification advised Ada Township that within thirty days it must either issue a special use permit authorizing construction of the tower at the selected site or, if Ada Township opposed the site selected by the State Police, it must propose an alternative site that met "Equivalent Site Criteria" adopted by the State Police.

---

[2] This case arose at a time when the tower was in the planning stages. However, we are advised that the tower was completed in June 1998 and became fully operational in September 1999. Motorola has supplied a photograph of the completed tower.

On September 10, 1997, the Ada Township Planning Commission held a special meeting at which it tabled a recommendation of an alternative site and approved a special use permit for the construction of the MPSCS radio tower on the Honey Creek site. The special use permit, however, limited the permissible height of the tower to 175 feet, applied setback and other restrictions contained in the township zoning ordinance, and incorporated height restrictions contained in the Kent County International Airport Zoning Ordinance.

On September 12, 1997, the State Police and Motorola similarly notified Kent County of its intention to construct a communications tower in Ada Township, and advised the County that it had thirty days to propose an equivalent site or grant a special use permit, if the county believed that the proposed tower did not comply with its zoning ordinance. Kent County neither proposed an alternative site nor issued a special use permit, and instead advised the State Police that it must apply for a permit to construct the tower.

In early December 1997, the State Police and Motorola notified Ada Township and Kent County of their intention to proceed with construction on the Honey Creek site and began pre-construction activity. Ada Township issued a stop-work order. Thereafter, Ada Township and the State Police reached an agreement under which the State Police would evaluate the feasibility of constructing the tower at the alternative site previously tabled by Ada Township. The agreement acknowledged that if third-party litigation ensued to challenge construction of the tower at the alternative site, that the State Police would abandon the alternative site and return to the Honey Creek site.

In fact, on January 7, 1998, a group of citizens opposed to construction of the tower at the alternative site filed suit seeking to require the State Police to construct the tower at the Honey Creek site. The State Police promptly abandoned the alternative site and commenced construction at the Honey Creek site.

Prior to construction, on December 12, 1997, the Federal Aviation Administration concluded that the proposed tower "would not be a hazard to air

4

navigation." On January 13, 1998, the Michigan Bureau of Aeronautics, to whom airspace reviews and approvals had been delegated by the Michigan Aeronautics Commission, issued a "Tall Structure Permit" for the proposed tower, an indication that its study found the tower would pose "noninterference to air navigation."

The plaintiffs are homeowners who live near the tower site. Some live on land adjacent to the site. In a complaint filed in circuit court, they sued the state of Michigan and the State Police.

The complaint is organized in five counts. First, the plaintiffs alleged that the statute governing the communications system (1996 PA 538) is unconstitutionally vague, and allows an arbitrary exercise of the discretion granted to the State Police. Second, they asserted that the State Police violated the Administrative Procedures Act[3] by not formally promulgating its "equivalent site criteria" as rules under the APA. Third, the plaintiffs complained of the defendants' plan to build a tower that does not comply with the height limit and other restrictions found in the special use permit issued by Ada Township. Fourth, the plaintiffs alleged that the proposed tower would be a nuisance. The fifth count was a claim of inverse condemnation.

Motorola filed a motion to intervene, which the circuit court later granted. It also filed a motion for summary disposition. MCR 2.116(C)(8), (10). The state of Michigan

---

[3] MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.*

and the State Police likewise moved for summary disposition. MCR 2.116(C)(4), (5), (7), (8), (10). After those motions were filed, the plaintiffs moved for a preliminary injunction to halt the project.

Before the motions were heard, the parties agreed that the inverse condemnation claim was a matter for the Court of Claims, and therefore should be dismissed without prejudice.

After hearing the motions for summary disposition and for a preliminary injunction, the circuit court dismissed the plaintiffs' remaining claims with prejudice and denied the request for an injunction.

The court ruled that the statute "is sufficiently instructive to meet the requirements of constitutionality" and that criteria for an equivalent site need not be promulgated under the APA. The court declined to find the tower a nuisance on the basis of its height, and said that the township's use permit did not govern the construction of the tower.

In that regard, the court noted this Court's decision in *Dearden v Detroit*, 403 Mich 257; 264; 269 NW2d 139 (1978). In *Dearden*, we held that legislative intent is the test for whether a governmental unit is bound by a local zoning ordinance.

In the present case, the circuit court said that the language of MCL 28.282(2); MSA 4.492(2) demonstrated the

6

Legislature's intent in this controversy.  The court also observed that this statutory language, enacted as 1996 PA 538, was a legislative override of a 1996 Court of Appeals decision in a case called *Addison Twp v State Police (On Remand)*, 220 Mich App 550; 560 NW2d 67 (1996).[4]

The plaintiffs appealed, but the Court of Appeals affirmed.  The plaintiffs have now applied to this Court for leave to appeal.

## II

The plaintiffs raise several issues, but we will address only one.  With regard to the remaining issues——those discussed at 239 Mich App 585-589 (and, by reference, 239 Mich App 582-584)——we have examined the plaintiffs' arguments and find no reason to modify the analyses offered by the Court of Appeals.

## III

We write today in order to address a question of

---

[4] 1996 PA 538 was introduced into the Legislature (as 1996 Senate Bill 1209) after the Oakland Circuit Court enjoined construction of a different MPSCS tower.  The bill was passed by the Legislature shortly before, and signed by the Governor shortly after, the Court of Appeals affirmed the injunction.  *Addison Twp* at 560.  This Court denied applications for leave to appeal as moot "[i]n light of the enactment of 1996 PA 538, and the fact that the defendants have proceeded with construction of the tower on an alternative site acceptable to the plaintiff . . . ." *Addison Twp v State Police*, 456 Mich 910 (1997).  Later, we observed that *Addison Twp* had been effectively overruled by the Legislature.  *Burt Twp v Dep't of Natural Resources*, 459 Mich 659, 664, n 3; 593 NW2d 534 (1999).

7

statutory interpretation, concerning 1996 PA 538, MCL 28.281 *et seq.*; MSA 4.491 *et seq.* Such questions are reviewed de novo. *Kent Co Deputy Sheriffs Ass'n v Kent Co Sheriff*, 463 Mich 353, 357, n 8; 616 NW2d 677 (2000).

IV

In *Burt Twp v Dep't of Natural Resources*, 459 Mich 659; 593 NW2d 534 (1999), suit was filed when the DNR began constructing a boat launch on Burt Lake without the approval of the township zoning board. Finding no legislative intent to exempt the DNR from the township's zoning ordinance, we found that the project was subject to the ordinance. 459 Mich 671.

Our *Burt Twp* opinion was built on the earlier decision in *Dearden*. There, the Archdiocese of Detroit leased a building to the Department of Corrections for use as a neighborhood center for housing inmates who would soon be released. The Detroit Zoning Board of Appeals would not approve that use of the property, however. This Court found that "the Legislature intended to grant the Department of Corrections immunity from local zoning ordinances when establishing state penal institutions." 403 Mich 267. The legislative intent was found to be controlling because:

> The common thread running through [earlier decisions on this subject], although not clearly stated in some, is an attempt to determine the intent of the Legislature when deciding whether a governmental unit is subject to a municipal zoning

8

ordinance. We hold today that the legislative intent, where it can be discerned, is the test for determining whether a governmental unit is immune from the provisions of local zoning ordinances. [403 Mich 264.]

We quoted that language in *Burt Twp*, reaffirming that "legislative intent, where it can be discerned, is the test for determining whether a governmental unit is immune from the provisions of local zoning ordinances." 459 Mich 663.

As indicated, MCL 28.282(2); MSA 4.492(2) provides the following, with regard to the role of local zoning authorities in the site-selection process:

> In siting the buildings and equipment necessary to implement the Michigan public safety communications system, the director of the department of state police shall locate the system, a local unit of government with zoning authority shall be notified of a site selected in their jurisdiction and the requirements necessary for a site. If the selected site does not comply with zoning, the local unit shall have 30 days from the date of notification to grant a special use permit or propose an equivalent site. If the local unit does not grant a special use permit within the 30 day period, or a proposed alternate site does not meet the siting requirements, the department may proceed with construction.

There can be no doubt of the correctness of the Court of Appeals statement that "[t]he clear import of the Legislature's enactment of 1996 PA 538, which by its terms grants the State Police responsibility for all matters concerning construction of the new MPSCS, was to exempt the State Police from local zoning ordinances so that the MPSCS could effectively and efficiently be constructed." 239 Mich

9

App 574.

As the Court of Appeals further observed, the Legislature recognized, in the second sentence of MCL 28.282(2); MSA 4.492(2), that the State Police might select a site that is incompatible with a local zoning ordinance. The Legislature dealt directly with that possibility, requiring notification, and giving the local unit of government the alternatives of timely issuing a special use permit or proposing an equivalent site. Finally, the Legislature specified the outcome if the local unit and the State Police cannot resolve the situation, authorizing the State Police to "proceed with construction" if the local unit neither issues a timely special use permit nor proposes an alternative that meets the siting requirements.

The language of the statute thus supports the Court of Appeals conclusion:

> [W]e read 1996 PA 538 as a clear expression of the Legislature's intent to vest the State Police with complete authority over construction of the communications tower, not subject to any other legislative act, including zoning ordinances. Indeed, if the State Police were subject to the provisions in the township zoning ordinances, the underlying purpose of the MPSCS could be effectively thwarted by local government entities imposing unreasonable restrictions to prohibit construction of the towers in appropriate locations. A careful reading of 1996 PA 538 evinces a contrary legislative intent. [239 Mich App 575-576.]

For these reasons, we agree with the Court of Appeals that the MPSCS project is not subject to local zoning ordinances or use permits issued under those ordinances,

10

except as specifically provided in MCL 28.282(2); MSA 4.492(2). Accordingly, we affirm the judgments of the circuit court and the Court of Appeals. MCR 7.302(F)(1).

CORRIGAN, C.J., and WEAVER, TAYLOR, YOUNG, and MARKMAN, JJ., concurred.

CAVANAGH and KELLY, JJ., concurred in the result only.